UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JARAMILLO RAMIRO LOACHAMIN,

      Petitioner,

v.

ACTING DIRECTOR STEVE
KURZDORFER, in his official capacity
as Director of Buffalo Field Office of
U.S. Immigration and Customs
Enforcement, et al.,

      Respondents.

25-CV-6124-MAV
DECISION & ORDER

---

*Pro se* Petitioner, Jaramillo Ramiro Loachamin, is a civil immigration detainee currently being held at the Buffalo Federal Detention Facility, in Batavia, New York. He filed a petition pursuant to 28 U.S.C. § 2241, claiming that he is being detained in federal immigration custody pending removal in violation of his right to due process. ECF No. 1. Petitioner asks that he either be released from custody or, in the alternative, granted a bond hearing at which Respondents would bear the burden to prove by clear and convincing evidence that Petitioner's continued detention is necessary to prevent flight or danger to the community. *See id.* His arguments are largely premised on the authority for his detention arising under 8 U.S.C. § 1226. *See id.* In opposition, Respondents maintain that Petitioner's application should be denied because Petitioner is being detained pursuant to 8 U.S.C § 1231 and, thus, his petition is premature. ECF No. 6-7.

For the reasons that follow, the Court agrees with Respondents. Accordingly, the petition must be dismissed without prejudice.

## BACKGROUND

Petitioner is a citizen of Columbia and entered the United States as a lawful permanent resident in 1981. ECF No. 6-1 at ¶¶ 5–6. Between 1995 and 2020, Petitioner accumulated several criminal convictions (and additional arrests), including: in 1995 for possessing stolen property; in 1997 for larceny; in 2005 for family offenses; in 2010 for driving while impaired; in 2015 for damaging property; and in 2020 for smuggling and transporting an alien. *Id.* at ¶¶ 7–20, 26.

The Immigration and Customs Enforcement Division of the Department of Homeland Security ("ICE") first initiated removal proceedings against Petitioner in 2014. *Id.* at ¶ 22. He was granted cancellation of removal, and removal proceedings were terminated accordingly. *Id.* at ¶ 23; *see* 8 U.S.C. § 1229b.

ICE reinitiated removal proceedings against Petitioner in 2023 and took Petitioner into civil immigration custody on September 21, 2023. ECF No. 6-1 at ¶ 28. An Immigration Judge issued an order of removal on April 11, 2024. *Id.* at ¶ 29. The Board of Immigration Appeals ("BIA") dismissed his appeal on September 24, 2024, rendering his removal order administratively final as of that date. *Id.* at ¶ 32; *see* 8 U.S.C. § 1231(a)(1)(A).

In October 2024, Petitioner filed a Petition for Review ("PFR") with the Second Circuit, challenging the BIA's dismissal of his appeal. ECF No. 6-1 at ¶ 34. He also filed a motion for a stay of removal with the Second Circuit, to which the government

objected. *Id.* at ¶¶ 35–36. As far as the Court is aware, the Second Circuit has not ruled on Petitioner's motion for a stay of removal or on his PFR. *See Jaramillo v. Bondi*, 24-2787 (2d Cir.) (the "2d Cir. Docket").[1]

He filed the instant § 2241 petition for habeas relief in this Court on March 4, 2025. ECF No. 1. As of the government's June 9 response, Petitioner remains detained at the Buffalo Federal Detention Facility. *See* ECF No. 6-1 at ¶ 38.

## LEGAL FRAMEWORK

28 U.S.C. § 2241 authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." In determining whether to grant habeas relief, the court may consider affidavits and documentary evidence such as records from any underlying proceeding. 28 U.S.C. §§ 2246, 2247; *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). In his habeas petition, Petitioner contends that his ongoing immigration detention, at a minimum in the absence of a bond hearing, violates his right to due process. In order to evaluate this claim, the Court must preliminarily determine the statutory basis for Petitioner's detention as that basis controls Petitioner's entitlement to relief.

The Immigration and Nationality Act (the "INA") authorizes the detention of aliens both before and after they are ordered removed from the United States. The government's power to detain an alien, however, must always be grounded in a specific provision of the INA. *See Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir.

---

[1] Docket in *Jaramillo v. Bondi*, Case No. 24-2787 (2d Cir.) last visited July 17, 2025.

2018). During removal proceedings, aliens are generally detained pursuant to 8 U.S.C. § 1226. *See* 8 U.S.C. § 1226 (governing the "apprehension and detention of aliens"); *Hechavarria*, 891 F.3d at 56–57. Section 1226(c)(1) mandates detention throughout the removal process of aliens, such as Petitioner here, who have committed specifically identified offenses.

Once an alien has been ordered removed and the removal order becomes administratively final, statutory authority for the alien's detention transitions to 8 U.S.C. § 1231. *See* 8 U.S.C. § 1231(a)(1)(A). Section 1231 mandates detention for aliens facing deportation during what the statute refers to as the "removal period." *Id.* § 1231(a)(2). Under the INA, the removal period is 90 days—within which the alien "shall" be removed. *Id.* § 1231(a)(1)(A). Section 1231(a)(1)(B) specifically defines the "removal period" as beginning "on the latest of the following:"

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B); *see, e.g., Wang v. Ascroft*, 320 F.3d 130, 147 (2d Cir. 2013) (holding petitioner's due process claim under § 1226 was "rendered moot" because the Second Circuit's decision on the PFR unquestionably commenced his "removal period" pursuant to § 1231(a)(1)(B)(ii)).

Judicial review of removal orders is available only through filing a PFR in a Circuit Court pursuant to 8 U.S.C. § 1251(a)(5). "The INA also contemplates the need

4

for stays of removal during the process of judicial review, observing that filing a petition for review does not stay the removal order, 'unless the court orders otherwise.'" *Hechavarria*, 891 F.3d at 54 (quoting 8 U.S.C. § 1252(b)(3)(B)). Should an alien file a motion to stay their removal with the Circuit Court and the Circuit Court grants the motion, statutory authority to continue to detain the alien transitions back to § 1226 until the Circuit Court issues its final order on the PFR. *Hechavarria*, 891 F.3d at 54–57; *see* 8 U.S.C. § 1231(a)(1)(B)(ii).

The core question in this case is whether Petitioner, whose order of removal became administratively final on September 24, 2024, is being detained under § 1231 or § 1226. *See Hechavarria*, 891 F.3d at 54 ("The government's power to detain an immigrant must be grounded in a specific provision of the INA."). The choice here has significant consequences for the instant petition for habeas corpus. If this Court finds that Petitioner is detained under § 1226, his petition must be granted to the extent that he be afforded an individualized bond hearing at which the government bears the burden of proof to show by clear and convincing evidence that continued detention is justified. *See Black v. Decker*, 103 F.4th 133, 145–55 (2d Cir. 2024) (holding that aliens who are detained under § 1226(c) for a "prolonged" period are entitled to such a hearing and concluding petitioner's seven-month detention was "prolonged"). If, on the other hand, the Court finds that Petitioner is detained under § 1231, his petition must be dismissed because he filed it within six months of the date on which his order of removal became final. *See Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001) (holding that although the INA provides for a ninety-day removal period, § 1231(a)

authorizes detention after a final order of removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States, and that detention pursuant to § 1231 is "presumptively reasonable" for up to six months).

Because Petitioner is subject to a final order of removal and remains in ICE custody, the issue that is dispositive of which statute applies is whether Petitioner's removal has been "stayed." *See* 8 U.S.C. § 1231(a)(1)(B)(i)–(iii).

## DISCUSSION

As noted, as far as the Court is aware, the Second Circuit has not ruled on Petitioner's motion for a stay of removal, and his PFR is still pending. In 2012, the Department of Homeland Security ("DHS") and the Second Circuit entered into an agreement wherein the government "assured that removal will not occur" while any immigration detainee's PFR is pending before the Second Circuit (the "Forbearance Agreement"). *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012). The Forbearance Agreement has been in effect since, and it applies to Petitioner in this case. At a minimum, as a matter of executive policy and as a practical matter, it is "assured" that Petitioner will not be deported while his PFR is pending and the Forbearance Agreement remains in effect.

There is an intra-circuit split regarding whether the Forbearance Agreement constitutes a "stay" under 8 U.S.C. § 1231(a)(1)(B)(ii). A majority of district judges in this Circuit have held that the Forbearance Agreement amounts to the "functional equivalent of stay order" and, accordingly, that the statutory authority for the alien's

6

continued detention transitions back to § 1226, from § 1231. *Yusuf v. Edwards*, No. 18-CV-3605 (GBD) (BCM), 2019 WL 4198798, at *5, 5 n.4 (S.D.N.Y. July 2, 2019) (collecting S.D.N.Y. cases); *see e.g.*, *Vazques v. Garland*, No. 1:21-CV-00477, 2021 WL 3741589, at *2–3 (W.D.N.Y. Aug. 24, 2021); *Vides v. Wolf*, No. 6:20-CV-06293, 2020 WL 3969368, at *6 (W.D.N.Y. July 14, 2020) (holding the "forbearance agreement effectively constitutes a consent order staying removal"); *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 795–96 (W.D.N.Y. 2019); *Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019) (collecting cases).

The Court respectfully disagrees and joins the minority of its sister courts[2] to hold that the Forbearance Agreement does *not* constitute a "stay" as dictated by 8 U.S.C. § 1231(a)(1)(B)(ii). *See, e.g., Dorville v. Searls*, No. 23-CV-6075, 2023 WL 4107981, at *4 (W.D.N.Y. June 21, 2023); *Brathwaite v. Barr*, 475 F. Supp. 3d 179, 186 (W.D.N.Y. 2020); *Narain v. Searls*, No. 19-CV-6361, 2020 WL 95425, at *3–4 (W.D.N.Y. Jan. 8, 2020). The Court finds that the text of the INA, case law binding on this Court, and the Second Circuit's treatment of the Forbearance Agreement in practice compel this result.

---

[2] Courts outside the Second Circuit have also concluded that the Forbearance Agreement between the Second Circuit and DHS is not a "stay" within the meaning of the INA. *See, e.g., Jean A. v. Dep't of Homeland Sec.*, No. 19-13951 (SDW), 2019 WL 6318305, at *2 (D.N.J. Nov. 26, 2019) ("As this Court and other courts in this district have consistently held, the forbearance agreement is not a court ordered stay and is therefore insufficient to revert a Petitioner's detention to pre-final order status.") (collecting cases); *Rone v. Aviles*, No. 15-3798 (KM), 2016 WL 158521, at *5 (D.N.J. Jan. 13, 2016) ("Several district courts within the Third Circuit have found that the Second Circuit's forbearance policy does not convert a petitioner's immigration detention status from Section 1231 to Section 1226.") (collecting cases).

I.  **The Forbearance Agreement Is Not a Stay**

8 U.S.C. § 1231(a)(1)(B)(ii) contemplates impacts to the "removal period" and the applicability of § 1231 to an alien's continued detention "[i]f the removal order is judicially reviewed and if *a court orders* a stay of the removal of the alien . . . ." (Emphasis added.) As the Second Circuit and Supreme Court have emphasized, "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.* 469 U.S. 189, 194 (1985), *as cited by Hechavarria*, 891 F.3d at 55 (discussing § 1231(a)(1)(B) in particular and at length). "Courts looking to understand a law must 'accept and apply the presumption that lawmakers use words in their natural and ordinary signification.'" *Brathwaite*, 475 F. Supp. 3d at 187 (quoting *King v. Burwell*, 576 U.S. 473, 501 (2015) (Scalia, J., dissenting)).

The plain language of the INA requires that a "stay" of an alien's removal must be court-ordered. 8 U.S.C. § 1231(a)(1)(B)(ii). "Reading the phrase, 'if a court orders a stay of the removal of the alien,' in Section 1231(a)(1)(B)(ii) to include the effect of an informal, Executive Branch policy not to remove aliens in certain situations" defies the ordinary meaning of the language Congress chose to enact. *Brathwaite*, 475 F. Supp. 3d at 187 (quoting § 1231(a)(1)(B)(ii)). Regardless of whether the Forbearance Agreement may have similar practical effects on a petitioner's removal as would a court-ordered stay, the Forbearance Agreement is not a court order. *See Mich. v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014) (Courts cannot "revise legislation . . .

8

just because the text as written creates an apparent anomaly as to some subject it does not address.").

In *Hechavarria*, the Second Circuit took a similar approach to its statutory interpretation of § 1231(a)(1)(B) in 2018. There, the Second Circuit reasoned that "the unambiguous language of the statute makes plain that Hechavarria cannot be detained pursuant to Section 1231" where his PFR was pending, the Second Circuit *had* ordered a stay of his removal, but had not yet issued a final order on his PFR. *Hechavarria*, 891 F.3d at 55. It went on to state:

> There is simply nothing ambiguous about the statute at issue. The removal period begins at the latest of three possible scenarios, one of which is *when a court issues its final order after having issued a stay. We granted Hechavarria a stay* and have not yet issued our final order regarding his petition for review. Thus, Hechavarria is not yet in a position that fall within 8 U.S.C. § 1231 and that statute does not apply.
> Section 1231 does not govern the detention of immigrants whose removal has been stayed pending judicial review. To hold otherwise would ignore the clear language of the statute as well as its internal logic. *When a court of appeals issues a stay* pending judicial review of an underlying removal order, the removal is not inevitable. A contrary reading assumes that the courts of appeals functions as mere ministerial rubber stamps for agencies.

*Id.* at 56 (emphases added). As emphasized above, the Second Circuit repeatedly reinforced that the text of the INA speaks only to court-ordered stays of removal. *See id*.

This plain reading of the statute is also consistent with the INA's legislative history. As the Supreme Court discussed in *Nken v. Holder*, Congress repealed the presumption of an automatic stay pending judicial review of an alien's petition when it passed the Immigration Reform and Immigrant Responsibility Act of 1996. 556

9

U.S. 418, 424–25 (2009). With this change, Congress "intentionally eliminated the presumption of an automatic stay for aliens seeking judicial review of their order of removal and replaced that presumption with the *requirement that the court of appeals expressly order a stay.*" *Narain*, 2020 WL 95425, at *4 (emphasis added) (citing 8 U.S.C. § 1252(b)(3)(B) ("Service of the petition on the officer or employee does not stay the removal of an alien pending the court's decision on the petition, unless *the court orders* otherwise." (emphasis added)).

Staying a matter is not "mere[ly] ministerial," nor can a stay be accomplished informally. *Hechavarria*, 891 F.3d at 56 (rejecting the government's arguments that implied that the Second Circuit's review function was "ministerial" or "a mere formality," and noting that the Circuit has a "responsibility to provide meaningful judicial review . . . grounded in both the [INA] and the Constitution"). A stay is "[t]he postponement or halting of a proceeding, judgment, or the like" or "[a]n *order* to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding." *Stay*, <u>Black's Law Dictionary</u> (11th ed. 2019) (emphasis added). A stay is an "intrusion into the ordinary processes of administration and judicial review" and, accordingly, "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (quotations omitted). "Beyond having the practical effect of preventing some action, a stay 'operates upon the judicial proceeding itself' by 'temporarily suspending the source of authority to act.'" *Brathwaite*, 475 F. Supp. at 187 (quoting *Nken*, 556 U.S. at 428–29). There is a pending motion for a stay in Petitioner's appeal from the BIA's decision. The Circuit's

10

review thereof is not a "mere formality." *Hechavarria*, 891 F.3d at 56; *see* 8 U.S.C. § 1231(a)(1)(B)(ii); *Nken*, 566 U.S. at 432–34 (holding that the standard of review for motion to stay removal is a four-factor test, which includes consideration of whether the applicant will be irreparably injured absent a stay and where the public interest lies).

Moreover, the type of "stay" implicated here is not a court ordering the suspension of its own proceedings but rather ordering the suspension of DHS's authority to remove an alien who was adjudicated deportable. *See* 8 U.S.C. § 1231(a)(1)(B)(ii). "In the context of an alien awaiting adjudication of a PFR, a stay is 'a temporary setting aside of the Government's authority to remove,' and a return to the status quo—namely, before the removal order was entered." *Brathwaite*, 475 F. Supp. at 187 (quoting *Nken*, 556 U.S. at 429). The Forbearance Agreement does not "set aside" the government's authority to remove aliens who have received a final order of removal. The government has merely agreed, in its discretion, not to utilize such authority while a PFR is pending. *See In re Immigration Petitions*, 702 F.3d at 162 (the government "has assured that removal will not occur"). That is not the "functional equivalent" of having DHS's authority set aside by the Judicial Branch. *Cf., e.g., Yusef*, 2019 WL4198798, at *5, 5 n.4.

The Second Circuit itself does not appear to treat the Forbearance Agreement as a stay of a petitioner's removal. Beyond describing the government's "assur[ance]" that it would not remove aliens whose PFRs are pending in the Second Circuit, another, and arguably the primary, purpose of the Forbearance Agreement was to

11

"set out a procedure for all immigration cases pending in [the Second Circuit] that will enable an interested petitioner and the Government to evaluate whether remand to the [Board of Immigration Appeals ("BIA")], . . . is appropriate." *In re Immigration Petitions*, 702 F.3d at 162. This was of particular importance to the Circuit given that "it is wasteful to commit judicial resources to immigration cases when circumstances suggest that, if the Government prevails, it is unlikely to promptly effect the petitioner's removal," and the Second Circuit singled out this issue as "undermin[ing] the Court's ability to allocate effectively its limited resources." *Id.* at 160–61.

In its 2012 opinion describing the Forbearance Agreement, the Second Circuit stated with respect to the "tolling" objective that:

> the Court *will issue an order* tolling the upcoming event to be performed in the case for a 90-day period for the parties to determine whether remand to the BIA is appropriate in the case. . . . If neither party has sought to resume the appellate process for any purpose by the close of business on the day of the 90-day tolling period ends (or the next business day if the tolling period ends on a weekend or holiday), time will immediately resume running for the next event that is due to occur in the case.
> . . . . In all pending immigration cases and, *until further notice, in all subsequently filed immigration cases, the Clerk of Court is directed to issue an order consistent with this decision on a rolling basis* commencing seven days from this date.

*Id.* at 161–62 (emphases added). *In re Immigration Petitions*, on the one hand, describes the government's discretionary policy not to remove an alien with a pending PFR while, on the other, sets forth a specific "tolling procedure" designed to facilitate a specific purpose—to determine whether remand to the BIA is appropriate before unreasonable resources are expended litigating in the Second Circuit—and directs that individual orders effectuating the latter will be issued on a rolling basis. *See id.*

160–62. The Second Circuit explicitly contemplated that there is a difference between its 2012 opinion describing the Forbearance Agreement and it issuing orders consistent with that opinion in every individual immigration case to effectuate the sought-after tolling procedure. *Id.* at 162. It, thus, seems doubtful to this Court that the Forbearance Agreement is itself a "consent order." *Cf. Vides,* 2020 WL 3969368, at *6. There is no corresponding language in the 2012 opinion directing that any orders be issued "consistent with [that] decision on a rolling basis" with respect to stays of removal. *In re Immigration Petitions,* 702 F.3d at 161–62. On the contrary, the Second Circuit merely stated that it "*will assume* that forbearance will continue while the case remains with the agency following our remand and during its return to this Court, if that should occur." *Id.* at 162 (emphasis added).

The docket in Petitioner's appeal before the Second Circuit here confirms this understanding. An "Immigration 90-Day Tolling Order"[3] was filed in Petitioner's case on November 4, 2024 (the "Tolling Order"). 2d Cir. Docket, ECF No. 16. Consistent with the Circuit's 2012 directives, the Tolling Order states that "it is hereby ordered"[4] that "the proceedings within this case, specifically Petitioner's time to file a scheduling notification, are tolled for a period of 90 days so that Petitioner and the Government may determine whether remand of this case to the BIA is warranted." *Id.* at 1. There is no mention of the Circuit Court ordering a stay of Petitioner's removal in the Tolling Order or otherwise on the docket. *See id.* The Tolling Order

---

[3] (Capitalization omitted.)

[4] (Capitalization omitted.)

13

was issued as a matter of course—no party moved for a tolling period. *See* 2d Cir. Docket.

In contrast, the appellate docket reflects, as mentioned, that Petitioner affirmatively filed a motion to stay his removal. *Id.,* ECF No. 12. Interestingly, the government filed an opposition to Petitioner's motion for a stay. *Id.,* ECF No. 15. A "Tolling Cancellation Order"[5] was later issued as directed in *In re Immigration Petitions*, which states "the tolling period is canceled, and the time for the next scheduled event in the case begins to run." *Id.,* ECF No. 20. The existence of certain orders stemming from the Forbearance Agreement on Petitioner's appellate docket support the logical inference that other components of the Forbearance Agreement that do not have a corresponding order cannot be construed as the equivalent of a court order.

Moreover, in instances where DHS has in fact deported an alien while their PFR was still pending and while the Forbearance Agreement was in effect, the Second Circuit has contemplated sanctioning the government for "breaching" the Forbearance Agreement, not holding DHS in contempt of a court order. *See, e.g.*, *Liyanage v. Holder*, 570 F. App'x 72, 75 (2d Cir. 2014) ("[B]ecause Liyanage was removed from the United States after filing the petition for review and a motion for a stay of removal, the government is [ordered][6] to show cause, within thirty days of the date of this order, why Liyanage was removed to Sri Lanka *despite the agreement*

---

[5] (Capitalization omitted.)

[6] (Capitalization omitted.)

14

*to forbear* from removing petitioners who have filed motions for stays of removal; why the government should not be sanctioned *for breaching the forbearance policy*; and what the government can do in the future to avoid removing petitioners who have pending motions for stays of removal." (emphases added)). *Cf., e.g., United States v. Donziger*, 38 F.4th 290, 305 (2d Cir. 2022) (affirming district court's imposition of sanctions on criminal defendant for contempt of court, stating "Donziger does not deny that he repeatedly refused to obey court orders over a period of years. The district court's findings of fact and conclusions of law describe Donziger's behavior as an 'extensive and continuous laundry list of past violations of [the district court's] orders' and as 'years of noncompliance.'").

Under these circumstances, the Court finds that the conclusion that the Forbearance Agreement is *not* a stay pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii) is supported by both the plain language of the INA and its treatment by the courts, directly and indirectly.

Accordingly, because Petitioner is subject to an administratively final removal order as of September 24, 2024, has not been granted a stay of removal by the Second Circuit, and has not been released from detention or confinement, § 1231 remains the statutory authority governing his detention. *See* 8 U.S.C. § 1231(a)(1)(B)(i)–(iii). As such, Petitioner's claims for relief pursuant to § 1226(c) are denied as moot. *See Wang*, 320 F.3d at 147. The Court now turns to the merits of his habeas petition under the § 1231 criteria set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

## II.    Under *Zadvydas*, the Petition Is Premature

As mentioned, in *Zadvydas v. Davis*, the Supreme Court determined that § 1231(a) authorizes detention after a final order of removal for a period "reasonably necessary" to effectuate the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700. The Supreme Court held that detention of a noncitizen for up to six months under § 1231 is "presumptively reasonable." *Id.* at 701. After this six-month period, the Court explained, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.*

Petitioner's order of removal became administratively final on September 24, 2024, when the BIA dismissed his appeal. At that point, the statutory authority for his detention transitioned from § 1226(c) to § 1231. *See* 8 U.S.C. § 1231(a)(1)(A). He filed his petition for habeas relief on March 4, 2025, less than six months later. Therefore, at the time he filed his petition, his continued detention *under § 1231* remained "presumptively reasonable," and claims that his detention has been unduly prolonged are thus premature under *Zadvydas*. *See, e.g., Mitchell v. Wolf*, No. 20-CV-1183 (JLS), 2021 WL 1516450, at *5–6 (W.D.N.Y. Apr. 15, 2021); *Ousman D. v. Decker*, No. CV 20-2292 (JMV), 2020 WL 1847704, at *7 (D.N.J. Apr. 13, 2020) ("As for Petitioner's argument that his likelihood of removal is unforeseeable, his argument is premature as he has not yet met the six-month period of detention[ ] that would trigger this inquiry under *Zadvydas*."); *Frederick v. Feeley*, No. 19-CV-6090-FPG, 2019 WL 1959485, at *4 (W.D.N.Y. May 2, 2019) (dismissing petition as

16

premature when the petitioner "ha[d] not been detained beyond the presumptively reasonable period of detention").

This remains the case even though, as of the date of this Decision and Order, Petitioner has been detained under § 1231 for longer than six months. *See Dao v. Bondi*, No. 25-CV-5 (JLS), 2025 WL 1005579, at *2 (W.D.N.Y. Mar. 26, 2025) ("[F]ederal courts generally hold that the six-month post-removal period must have expired at the time the detainee's [§] 2241 petition was filed in order to state a claim under *Zadvydas*." (quotation and alteration omitted)); *Gomez v. Whitaker*, No. 6:18-CV-06900-MAT, 2019 WL 4941865, at *1, 5 (W.D.N.Y. Oct. 8, 2019) (dismissing petitioner's *Zadvydas* claim as premature, where the petition was filed before the six-month period lapsed, but the court's decision was signed after that period).

Accordingly, the Court dismisses the petition under § 1231 without prejudice. Petitioner may file a new petition "providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

## CONCLUSION

The Court has joined the minority of its sister courts to conclude that the Forbearance Agreement does not constitute a "stay" under 8 U.S.C. § 1231(a)(1)(B)(ii). Because the Court finds that Petitioner is subject to a final order of removal, the Second Circuit has not ordered a stay of his removal, and he has not been released from detention or confinement, Petitioner is detained pursuant to § 1231. *See id.* § 1231(a)(1)(B)(i)–(iii). As such, his petition, which was filed before the

17

presumptively reasonable period of detention expired, *see Zadvydas*, 533 U.S. at 689, is premature and must be dismissed without prejudice

## ORDER

IT IS HEREBY ORDERED that the petition for habeas corpus, ECF No. 1, is DISMISSED WITHOUT PREJUDICE; and it is further

ORDERED that the Clerk of Court shall close this case and mail a copy of this Decision and Order to Petitioner.

SO ORDERED.

Dated: July 23, 2025
Rochester, New York

_____
MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE